UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JIMMY L. BALLEW, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:10-CV-279 |
| | ) (VARLAN/SHIRLEY) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgment and Memorandum in Support [Docs. 11 and 12] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 18 and 19]. Plaintiff Jimmy L. Ballew, Jr., seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On April 2, 2008, the Plaintiff filed an application for a period of disability, disability insurance benefits, and/or supplemental security income, claiming a period of disability which began March 27, 2008. [Tr. 12]. After his application was denied initially and also denied upon reconsideration, the Plaintiff requested a hearing. On September 16, 2009, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 21-36]. On October 9, 2009, the ALJ found

that the Plaintiff was not disabled. The Appeals Council denied the Plaintiff's request for review, [Tr. 1-3]; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

**I.     ALJ FINDINGS**

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.

2. The claimant has not engaged in substantial gainful activity since March 27, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: asthma and seizure disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination or impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels except that he should not climb ladders and should avoid exposure to hazards, dramatic temperature changes, and sunlight.

6. The claimant is capable of performing past relevant work as a call center operator, cashier, and general laborer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 27, 2008 through the date of this decision (20 CFR 404.1520(f)).

[Tr. 14-20].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

3

> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d

5

1230 (6th Cir. 1971)).

IV.     ANALYSIS

On appeal, the Plaintiff argues that the ALJ's disability determination is not supported by substantial evidence. The Plaintiff contends the ALJ erred by: (A) discounting the opinions of Sam A. Kabbani, M.D., (B) discounting a mental residual functional capacity evaluation completed by Dr. Vargus,[1] a reviewing physician, and (C) discounting the Plaintiff's testimony at the hearing. [Doc. 12 at 4]. The Commissioner, in response, contends substantial evidence supports the ALJ's disability determination. [Doc. 19 at 22].

A.      **The Opinion of Sam A. Kabbani, M.D.**

It appears to be undisputed that Sam A. Kabbani, M.D., ("Dr. Kabbani"), treated Plaintiff for his seizure disorder. Nonetheless, a brief review of this treatment is appropriate. A March 2007 extended EEG ordered by Dr. Kabbani revealed abnormal tracing due to recurrent paroxysmal sharp forms, high voltage activity, and slowing, which was suggestive of seizure disorder. [Tr. 167]. Dr. Kabbani increased Plaintiff's medication, Keppra, an antiepileptic drug, instructed him not to drive, and planned additional testing. [Tr. 166]. The Plaintiff later reported thoughts of suicide, which started after the addition of Keppra, and Dr. Kabbani tapered down the Keppra and prescribed Tegretol, an anticonvulsant. [Tr. 164].

In April 2007, Dr. Kabbani noted that Plaintiff was doing much better. [Tr. 290]. His wife agreed that, since coming off the Keppra, Plaintiff's mood and affect had been much improved. [Tr.

---

[1] The places in the record at which Dr. Vargus's full name and title appear, see, e.g., Tr. 261, are illegible.

6

290]. In July 2007, Dr. Kabbani noted that Plaintiff was working and was not missing any work. [Tr. 289].

When Plaintiff saw Dr. Kabbani on November 6, 2007, he reported that his seizure activity "seem[ed] to be more frequent, but less severe." [Tr. 288]. The Plaintiff's headaches had been occurring with weather changes, and Dr. Kabbani noted, "At times his headaches keep him in bed at least once per week." [Tr. 288].

The Plaintiff saw Dr. Kabbani in April 2008. The Plaintiff reported that when he worked, the computer screen seemed to accentuate his seizures. [Tr. 286]. Dr. Kabbani noted, "He is unable to work currently due to his work restriction. He is advised possibly he [could] do a very sedentary job." [Tr. 286].

On August 26, 2008, Dr. Kabbani filled out a form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" [Tr. 263]. Therein, Dr. Kabbani indicated that the Plaintiff would have slight and/or marked difficulties in each of the areas listed on the form, including, the ability to understand, remember, and carry out short, simple instructions; the ability to understand, remember, and carry out detailed instructions; and the ability to make judgments on simple work-related decisions. [Tr. 263]. Dr. Kabbani explained the Plaintiff's condition as follows, "During seizures – which are episodic – pt. may be confused, disoriented, unfocused, tremulous – but during uneventful periods, pt. is unaffected – so, above ranges are 'slight' to 'moderate/marked.'" [Tr. 263].

Dr. Kabbani indicated that during seizures the Plaintiff would have marked difficulty: interacting appropriately with the public, supervisors, and co-workers; responding appropriately to work pressures in a usual work setting; and responding appropriately to changes in a routine work

7

setting [Tr. 264]. Dr. Kabbani reported that the Plaintiff's concentration, motor skills, and problem-solving skills were "all intact except during seizure-activity – which occurs sporadically." [Tr. 264]. Dr. Kabbani noted, "Stress, computer screens (functioning), weather change, pain, lack of sleep, skipped dosages (of seizure [medications])] all can exacerbate seizures." [Doc. 264].

On the same day, Dr. Kabbani completed a second form entitled, "Medical Source Statement of Ability to Do Work-Related Activities (Physical)," which was formatted in a check-mark and short-answer format like the initial form. [Tr. 266-69]. Dr. Kabbani indicated that the Plaintiff's ability to lift and carry would only be affected when the Plaintiff was experiencing a seizure. [Tr. 266]. Dr. Kabbani indicated that the Plaintiff could occasionally lift 50 pounds, could frequently lift 25-50 pounds, and could stand and/or walk about 6 hours in an 8-hour workday, with the notation that these abilities would be limited when the Plaintiff was experiencing a seizure. [Tr. 266]. Dr. Kabbani also indicated that the Plaintiff's abilities to push, pull, climb, balance, kneel, crouch, crawl, and stoop would be limited when he was experiencing a seizure or the post-ictal state, which he described as possibly lasting hours or days. [Tr. 267]. Dr. Kabbani indicated that during a seizure, all of the Plaintiff's senses would be affected, as would his ability to reach, handle, and finger, [Tr. 268], and finally, Dr. Kabbani indicated that noise, dust, temperature extremes, humidity, hazards, and fumes and odors could trigger seizures, though he cited his "seizure letter" for a list of seizure triggers.

Dr. Kabbani also composed a "seizure letter,"[2] addressed "To Whom It May Concern," denoting that the "patient," had been diagnosed with epilepsy, describing general precautions to be

---

[2]The seizure letter, like the mental and physical evaluation forms, did not include the Plaintiff's name or any identifying patient numbers.

8

made for the condition, symptoms of the disorder, situations that exacerbate the condition, and "[s]ituations to avoid." [Tr. 270]. The situations to avoid were noted to include: "no climbing/heights, no sharp objects, no working around flames/fire, no increased stressors (when possible) and NO DRIVING (unless seizure-free > 6 months per Tennessee state law.)" [Tr. 270].

On September 15, 2009, Dr. Kabbani composed a second letter regarding the Plaintiff's condition. In this letter, Dr. Kabbani stated that he had treated the Plaintiff for seizure disorder since March 5, 2007, the date on which an EEG revealed abnormal tracing due to recurrent paroxysmal sharp forms, high voltage activity, and slowing. [Tr. 315]. Dr. Kabbani also stated that he had reviewed Listing 11.03, which he quoted in its entirety, and he opined that "Mr. Ballew meets the requirement of this rule." [Tr. 315].

In reviewing the evidence of record, the ALJ discussed extensively Dr. Kabbani's history of treating the Plaintiff and the medical and physical evaluations forms completed by Dr. Kabbani. [Tr. 15]. The ALJ also described and discussed the letter composed by Dr. Kabbani in September 2009, asserting that the Plaintiff met the criteria for disability contained in Listing 11.03. [Tr. 16]. The ALJ, however, noted:

> [T]reatment records from the claimant's primary care physician indicated that the claimant has not always been compliant with taking his prescribed anti-seizure medications as prescribed. On two occasions, the laboratory tests indicated that the claimant's level of anti-seizure medication was below the therapeutic level.

[Tr. 16 (internal citations removed)].

In explaining her determination that the Plaintiff could perform the full range of work at all exertional levels, with certain restricts, the ALJ stated:

> Dr. Kabbani provided a letter and Medical Source Statements of Ability to do Work-Related Activities. The undersigned finds these

9

> to be too restrictive based upon the treatment notes and objective findings. The possiblity always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians and practitioners, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in this case. The undersigned has reviewed the letter and Medical Source Statement of Ability to do Work-Related Activities and can accord them only minimal weight as they do not appear to be work based on objective medical evidence of record and contrast[] sharply with the other evidence of record, which renders [them] less persuasive. The opinion of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary.
>
> There are notations in the record of the claimant's non-compliance with medications and in November 2007 and March 2008, laboratory reports showed Depakote and Tegretol were below therapeutic level. The State Agency physician noted that if the claimant's anti-covulsants were managed at a therapeutic level, the seizures could be controlled. Any lack of effectiveness is clearly attributable to evidence that the claimant was not entirely compliant in taking prescribed medications, which also suggests that his symptoms may not have been as limiting as alleged in connection with this application.

[Tr. 18-19].

The Plaintiff argues that the ALJ's comments regarding the pressure for favorable documentation sometimes placed upon physicians by patients are "bold and sweeping speculation." [Doc. 12 at 3]. The Plaintiff argues that the ALJ improperly relied upon the opinions of non-treating sources, who were not as qualified to evaluated the Plaintiff's condition. [Doc. 12 at 3]. The Plaintiff does not discuss Listing 11.03 nor does the Plaintiff cite the Court to any specific evidence that would undermine the ALJ's determination.

10

The Commissioner initially notes that Dr. Kabbani, himself, described Plaintiff's physical and mental abilities as only being limited when the Plaintiff was experiencing a seizure or in the postictal state that followed seizures. [Doc. 19 at 15-16]. The Commissioner reiterates the position that Dr. Kabbani's opinion is not supported by objective medical findings and is inconsistent with other evidence in the record. [Doc. 19 at 16]. Specifically, the Commissioner cites the findings of Kanika Chaudhuri, M.D., who reviewed the medical evidence and found that the Plaintiff had a history of subtherapeutic treatment for his seizure disorder and that "if managed properly, [seizures] can be controlled." [Tr. 243].

The Court will first address Dr. Kabbani's opinions as to the Plaintiff's physical and mental residual functional capacity. It appears from a review of the forms filled out by Dr. Kabbani that his findings do not, in fact, contradict the ALJ's finding. Dr. Kabbani identified many limitations that the Plaintiff has when a seizure occurs, but he did not necessarily exclude the Plaintiff from completing the physical and mental tasks associated with the full range of work. Rather, it is the Plaintiff's testimony, as to the frequency of his seizures, that when combined with the limitations that occur during and after the seizure, may preclude the Plaintiff from work. In fact, Dr. Kabbani, himself, suggested that the Plaintiff could continue to work, albeit with more limited exertion than found by the ALJ. [See Tr. 286].

Putting this observation aside, the Court will presume, as the ALJ and parties appear to have, that Dr. Kabbani's findings would limit the Plaintiff to some degree of exertion less than the full range of work. Dr. Kabbani's report does not provide a detailed description of typical seizure pattern, nor does it provide any description of the frequency of the seizures. See 20 C.F.R. Pt. 404, Subpt. P., App'x 1, Listing 11.03. It does not indicate that the Plaintiff was experiencing a seizure

11

per week or suggest that the Plaintiff was compliant with his treatment for three months, see id. ("occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment"). The evidence of record indicates the contrary. It suggests sporadic seizures, questionably related to non-compliance with the prescribed treatment. Thus, neither Dr. Kabbani's report nor the evidence in the record support finding seizure activity sufficient to meet the seizure disorder listing requirements found in Listing 11.03.

Moreover, even if the Plaintiff was limited, as Dr. Kabbani suggested, to a sedentary job [Tr. 268], the Plaintiff is a younger individual and his ability to complete sedentary work almost certainly result in a finding that he was not disabled using the Medical Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App'x 2. See Keen v. Sec'y of Health & Human Servs., 1987 WL 38894, *4 (6th Cir. Nov. 9, 1987); see also Lawrence v. Astrue, 337 Fed. App'x 579, 583 (7th Cir. 2009).

Finally, the Court is well-aware of the treating physician rule[3] and has considered the implications of the treating physician rule in this case. The Plaintiff does not direct the Court to, nor can the Court find any specific portions of Dr. Kabbani's opinion that contradict the ALJ's findings or to which according controlling weight or additional weight would have directed a finding of disability. Therefore, the Court will not engage in a written application of the treating physician rule

---

[3]If a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).

in this case.

Accordingly, the Court finds that the Plaintiff's allegation of error based upon the ALJ's failure to consider Dr. Kabbani's findings is not well-taken.

B.      **The Residual Functional Capacity Determination by the State Reviewing Psychologist**

The Plaintiff also argues that the ALJ did not fully consider the residual functional capacity determination submitted by the state reviewing psychologist. In its entirety, the Plaintiff's argument in support of this position is that "the ALJ's Decision evinces a cursory disregard for the findings of State psychological consultant Dr. Vargus, who diagnosed the Plaintiff with depressive disorder and assigned moderate limitations in the Plaintiff's ability to maintain concentration, persistence and pace." [Doc. 12 at 3 (internal citations omitted)].

The Commissioner responds that, contrary to the Plaintiff's claim, the ALJ did not disregard this assessment. The Commissioner argues that the ALJ, instead, explicitly considered and discussed Dr. Vargus's opinion and she explained that she found Dr. Vargus's opinion to be too restrictive in light of the record as a whole. [Doc. 19 at 13 (discussing Tr. 16, 19)].

The Commissioner argues that the evidence in the record demonstrates that the Plaintiff was not limited in his mental functioning. The Commissioner maintains that the Plaintiff did not received specialized mental health treatment for his anxiety and depressive disorders for a twelve-month period, so as to meet the durational requirement of the Act. See 42 U.S.C. § 423(d)(1)(A). For example, in April 2009, he told his family physician Gurprett Narula, M.D., that he "want[ed] something for his nerves," [Tr. 303], and in July 2009, Dr. Kabbani advised Plaintiff to see a psychiatrist when Plaintiff reported some anxiety , [Tr. 300]. However, there is no evidence that

13

Plaintiff sought such treatment.

With the parties' arguments in mind, the Court turns to Dr. Vargus's findings. On August 5, 2008, Dr. Vargus reviewed the record and found that the Plaintiff did not meet the criteria contained in Listing 12.02 Organic Metal Disorders or 12.04 Affective Disorders, though he did note that other impairments were present including depressive and seizure disorders. [Tr. 247-49]. Dr. Vargus found that the Plaintiff would have only mild restrictions in his daily living activities and mild difficulties maintaining social functioning. [Tr. 256]. Dr. Vargus found the Plaintiff would have moderate difficulties maintaining concentration, persistence, or pace, but Dr. Vargus found the Plaintiff would have no extended episodes of decompensation. [Tr. 256].

Dr. Vargus found that the Plaintiff would not be significantly limited in his ability to: remember locations and work-like procedures, understand short and simple instructions; carry out very short and simple instructions; maintain regular attendance and be punctual within customary tolerances; maintain an ordinary routine without special supervision; make simple work-related decisions; interact appropriately with the general public; ask simple questions and request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with peers without distracting them; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; be aware of normal hazards; travel in unfamiliar places or use public transportation; and set realistic goals or make independent plans. [Tr. 259-60].

Dr. Vargus found that the Plaintiff would have moderate limitation in only six of the areas listed, including: his ability to understand detailed instructions; his ability to carry out detailed instructions; his ability to maintain attention and concentration for extended periods; his ability to work in coordination with others without being distracted by them; his ability to ability to complete

14

a normal workday and workweek without interruptions from psychologically based symptoms; and his ability to respond appropriately to changes in the work setting. [Tr. 259-60]. Dr. Vargus did not find that the Plaintiff would have marked limitations in any of the functional areas listed on the Mental Residual Functional Capacity Assessment form.

In discussing Dr. Vargus's findings and the Plaintiff's mental residual functional capacity, the ALJ noted:

> In August 2008, Dr. Vargus asserted that the claimant had mild limitations in restriction of activities of daily living and difficulties in maintaining social functioning and moderate limitations in maintaining concentration, persistence, and pace.
>
> . . . .
>
> The first functional area is activities of daily living. In activities of daily living, the claimant has mild restrictions as he reported that he attends to his personal needs, prepares simple meals, and does household chores. The next functional area is social functioning. In social functioning, the claimant has mild limitations. He reports that he visits and talks with friends on the phone and shops. He is apparently able to function in an appropriate manner in the public domain in such places as doctor's offices, grocery stores, and other facilities. The claimant demonstrated no abnormal social behaviors during the hearing. The third functional area is concentration, persistence or pace. With regard to concentration, persistence or pace, the claimant has mild difficulties. He reported that he drives, pays bills, and reads. At the hearing, the claimant demonstrated average intellectual functioning and was able to understand and follow the hearing proceedings and all lines of questioning. The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation.

[Tr. 16 (internal citations omitted)]. The ALJ later reviewed the weight accorded to the various treating and reviewing sources in the record and explained, "[L]ittle weight has been accorded to the opinion of the State Agency psychological consultant Dr. Vargus at the reconsideration level, as his

15

opinion is too restrictive in light of the record as a whole." [Tr. 19].

Initially, the Court finds that the Plaintiff's argument as to Dr. Vargus is so underdeveloped that it could be found to constitute a waiver of the issue altogether. As the Court of Appeals for the Sixth Circuit has directed, "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." El-Moussa v. Holder, 569 F.3d 250, 257 (6th Cir. 2009) (internal quotation marks omitted); see also id. ("It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.") (alteration in original) (internal quotation marks omitted). The Plaintiff's statement that "the ALJ's Decision evinces a cursory disregard," does not cite a statute, regulation, or case as legal basis for finding error nor does it in any way develop or apply legal authority to this assertion. The Plaintiff has left it to the Court "to put flesh on its bones." See id. Thus, there is a strong argument in favor of finding the Plaintiff's argument as to Dr. Vargus is waived.

Notwithstanding and out of an abundance of caution, the Court will presume that the Plaintiff intends to argue under that the ALJ did not comply with the provisions of 20 C.F.R. §§ 404.1527 and 416.927, requiring the ALJ to consider Dr. Vargus's non-examining opinion based upon its supportability, its consistency with the record, any speciality by Dr. Vargus, the length of the Plaintiff's relationship with Dr. Vargus, and other factors. See 20 C.F.R. §§ 404.1527(f) and 416.927(f).

The Court finds that the ALJ properly considered Dr. Vargus's opinion. Though Dr. Vargus specializes in psychology, he did not examine or treat the Plaintiff, and as the ALJ noted, at length, Dr. Vargus's findings of mild and moderate limitations were not consistent with the Plaintiff's stated and observed abilities to function and complete the activities of daily living. [Tr. 16]. Moreover, the

16

mild descriptions of the Plaintiff's mental impairments from his treating physicians, [see Tr. 300 ("Patient is having some anxiety.")], and the Plaintiff's failure to seek any psychiatric treatment support the ALJ's findings that the Plaintiff's mental limitations were not as severe as Dr. Vargus found.

Accordingly, the Court finds that the Plaintiff's allegation of error based upon the weight afforded to Dr. Vargus's findings is not well-taken.

**C.     Plaintiff's Testimony at the Hearing**

Finally, the Plaintiff presents an argument that once again can be fairly described as cursory. In the portion of his brief entitled "Conclusion," the Plaintiff adds his third argument, which is that the ALJ improperly discounted "the Plaintiff's own testimony at the hearing as to his medical conditions and symptoms (Record, pages 19, 20, 21-34)." [Doc. 12 at 4]. The Plaintiff cites the Court to fourteen pages in the record, but he does not direct the Court to any specific testimony that he believes was improperly discounted.

The Court reiterates that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." El-Moussa, 569 F.3d at 257. Because the Court cannot guess at what testimony the Plaintiff contends has been improperly discounted, the Court finds that this argument is waived. The Plaintiff has failed to develop this argument, and without more, the Court declines to do so for him.

## V. CONCLUSION

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing the full range of work at all exertional levels with certain stated limitations. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[4] that Plaintiff's Motion For Summary Judgment **[Doc. 11]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 18]** be **GRANTED**.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[4]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).